UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-154

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ROBERT LAWRENCE STACE,

      Defendant.

**GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING**

The United States respectfully requests a sentence of 285 months, adjusted to 270 months to credit related state imprisonment, and lifetime supervised release. Such a sentence justly accounts for the grave nature of the defendant's crime, his history of child exploitation, and his characteristics. The proposed sentence will protect the public, promote respect for the law, avoid unwarranted disparities, and is sufficient but not greater than necessary considering all the facts before the Court.

## BACKGROUND

Mr. Stace is a serial child predator who continues to access child pornography despite convictions, prison terms and release conditions. Most recently, Stace was convicted in 2017 of being a predatory offender in possession of child pornography. He was released from state custody for that offense on February 4, 2020. On February 24, 2020, his supervising officer received a tip that

Stace was sending emails in the middle of the night when he should not have had access to a computer, as Stace was under strict conditions regarding internet access. The terms of his release forbade him from accessing sexually explicit material and from possessing unauthorized electronic devices. PSR ¶ 8. Upon receiving the tip, the probation officer and her partner went to a community center where they found Stace in the public computer lab looking at child pornography. ¶¶ 9-10. They noticed an MP3 player on the desk and a second MP3 player below the desk plugged in to the computer Stace was using. A printout of Stace's internet activity revealed sites with "child porn" and known child pornography victims' names in the titles of the webpages he visited. PSR ¶ 9. Stace was arrested for violating the terms of his supervised release. As the agents closed his computer windows, they saw a very young child with her legs spread open. PSR ¶ 10.

Stace told the probation agents that he was downloading child pornography from one of his email accounts to his MP3 player so that he could watch it later. *Id*. He also confessed to having two illicit email accounts that he used for child pornography, including sending files to himself. *Id*. Two of these instances are reflected in Counts 1 and 2 of the Indictment.

In these email accounts, investigators found hundreds of depictions of child sexual abuse, including emails from 2013 in which Mr. Stace sent such files to others. The forensic examiner also found 626 child pornography files on one of

Stace's MP3 players and 516 child pornography files on the hard drive from the computer lab where Stace was accessing the internet. The data on this hard drive also showed that Stace had downloaded child pornography from the computer lab on several other dates in February 2020. However, 73 of the child exploitation files on Stace's MP3 player were created on February 15, 2020, when the computer lab was closed, showing that Mr. Stace had connected to another computer that day. Stace's possession of these files underlies Count 3 of the Indictment.

Mr. Stace's criminal history is a string of child exploitation offenses connected by supervised release violations that were also new crimes. Mr. Stace is presently incarcerated for violating his Hennepin County supervised release based on the conduct described above. His anticipated release date is June 28, 2021. At the time of the instant offenses, Stace was on supervised release for the 2017 conviction of predatory offender in possession of child pornography and for a 2003 criminal sexual conduct conviction. PSR ¶¶ 44, 45.

The more recent conviction stemmed from Stace's possession of hundreds of images of child pornography within days of being released to supervision. On May 3, 2016, Stace was released from imprisonment for his 2003 conviction for criminal sexual conduct. PSR ¶ 44. On May 11, 2016, Stace was discovered using the public Wi-fi at the Hennepin County Government Center to access one of his email accounts containing child pornography. PSR ¶ 45. He planned to download

3

the files onto the iPod in his possession. *Id*. He was convicted and sentenced to 45 months' imprisonment. *Id*.

The 2003 criminal sexual conduct conviction for which Mr. Stace was on supervised release when he accessed child pornography at the government center, involved repeated oral and anal rape of ▬▬▬ nine-year-old ▬▬▬. PSR ¶ 44. Stace was convicted in 2003 of First Degree Criminal Sexual Conduct and sentenced to one year in jail, 216 months' imprisonment stayed for 10 years, and 10 years' probation. *Id*. Upon violating probation, Mr. Stace was sentenced to 144 months of prison. *Id*. While in custody, Stace possessed contraband on multiple occasions, including magazine cutouts of children, stories of sex with children, and sexual assaults by offenders in custody. *Id*. When released, he violated supervision nine times, including possession of a notebook with directions for accessing pornographic material and possession of child pornography, including the 2016 online exploitation and the instance offense conduct. *Id*.

On August 5, 2020, the grand jury indicted the defendant on two counts of transportation of child pornography and one count of possession of child pornography. In February 2021, at the parties' request, the Court ordered a pre-plea presentence investigation and combined plea and sentencing hearing. In the plea agreement, Mr. Stace agrees to plea guilty to Count 1 and the government agrees it will move to dismiss Counts 2 and 3 at sentencing. As part of the plea

agreement, Mr. Stace agrees to the Bureau of Prison's Residential Sex Offender Treatment Program currently available at FMC Devens and the parties will ask the Court for this recommendation.

## GUIDELINES CALCULATIONS

The pre-sentence investigation report calculated a base offense level of 22, and a total offense level of 39. PSR ¶¶ 23-37. The defendant has a criminal history score of six and committed the instant offense while under another criminal justice sanction, placing him in category IV. PSR ¶ 48. Accordingly, the PSR calculates a Sentencing Guidelines range of 360-480 months of imprisonment. PSR ¶ 91. These calculations are in accord with those of the government and the United States respectfully requests that the Court adopt the facts and Guidelines calculation of the PSR.

However, the parties differ from the PSR with respect to application of Guidelines Section 5G1.3. The parties understood that Mr. Stace's current imprisonment with the Minnesota Department of Corrections for supervised release violations in Hennepin County Court File 27-CR-16-29223 would provide a downward adjustment because the same conduct underlying that sentence, the possession and transportation of child pornography in February 2020, constitutes and is relevant conduct to the instant offense. Plea Agreement ¶ 8; *see* U.S.S.G § 5G1.3(b). By contrast, the PSR found that Stace's state sentence fell within §

5

5G1.3(d) rather than § 5G1.3(b). Accordingly, in conformity with the plea agreement the government objects to paragraph 92 of the PSR. However, even under § 5G1.3(d), the Guidelines direct the Court to impose the instant sentence with any amount of overlap necessary to achieve a reasonable punishment for the offense. U.S.S.G. § 5G1.3(d); PSR ¶ 92. Considering the identity in conduct here and for which Stace is currently in custody, the government submits that a concurrent sentence is warranted. PSR ¶¶ 109, 110. As the PSR notes, the parties' anticipated result could be achieved with a downward variance, as opposed to an adjustment under § 5G1.3(b), and concurrent application to the small amount of time that remains on Mr. Stace's state sentence. PSR ¶ 113.

## ARGUMENT

An individualized assessment of the factors of Section 3553(a), as well as the advice of the Guidelines, show that the parties' jointly requested sentence of 270 months (285 months less the 15 months served on the same conduct) is just and appropriate on the facts before the Court.

**A. The 3553(a) factors call for a sentence that reflects the gravity of the offense and addresses the danger defendant presents.**

1. *The nature and circumstances of the offense*

The defendant's offense effects harm of a broad and profound nature by perpetuating the trauma and suffering of the thousands of victims whose abuse he sought for sexual gratification. The offense also reflects a total disregard for

court rules and an incessant exploitation of children. Defendant's child pornography searching, emailing, and downloading occurred only 20 days after his release from prison for a prior conviction for possession of child pornography. PSR ¶¶ 8, 9.  His collection – amassed in 20 short days - included more than 1,842 images and 119 videos of child pornography, as well as almost 7,000 so-called child erotic or age difficult material.  PSR ¶ 13. These depictions included images and videos of prepubescent minors under the age of 12 and depictions of sadistic abuse and other violence. *Id.*; Plea Agreement ¶ 2. Mr. Stace was prohibited from possessing sexually explicit material and was required to disclose all electronic devices to his probation officer. PSR ¶ 8. In direct violation of those conditions he went to a public computer lab with two MP3 players and started emailing and downloading child pornography. *Id.* ¶¶ 9-13. And he did this again and again, as his staggering short-term collection and computer lab data attest.

Stace created multiple email accounts devoted to child pornography and even invited others to share in the abuse by providing his "Lucy Ferr" account credentials to a fellow inmate at MCF-Lino Lakes, where Stace resided before his release. *Id.* ¶ 14. He emailed himself exploitation files so that he could watch them from his halfway house and similarly saved thousands of files to his MP3 player. He flagrantly violated the rules of his release and trafficked images and videos of

7

"the worst moments" of the victims' lives, thereby perpetuating the harm so that these children "cannot escape [the] victimization." PSR at 7, 10.

As the words of "Henley," one of the identified victims, movingly illustrate, online exchange of child pornography does continued and repeated damage to its victims, who live in fear and anger, even when they are rescued from the physical assaults. *See* PSR ¶ 17. "Although I have come to terms with what happened to me, I fear I may never be able to heal completely because it never ends. It's like constantly having a scab ripped off a wound that is trying to heal." *Id*. p. 5. They fear strangers have seen the recordings of their sexual abuse, they cannot trust, they cannot interact like other human beings who were spared such degradation and pain. PSR ¶ 17. When strangers trade their images the "torture go[es] on forever." *Id*. p. 6. As "Anna" says, knowing that those like Mr. Stace "are still people looking at my images forc[es] me to remember that I am still vulnerable and exposed. It will never stop. I can't move on. I am helpless to do anything about it." *Id*. p. 8. All the Victim Impact Statements express similar sentiments about the inability to escape the trauma and the fear, self-loathing, anxiety, and distrust that result. PSR ¶ 17.

Mr. Stace acted with total disregard for the rules of his release and in unrelenting violation of the rights and privacy of the children in the files he searched for, emailed, and downloaded. The harm to these victims is self-evident

and recognized by courts. *See, e.g., See New York v. Ferber*, 458 U.S. 747, 758 n.9 (1982). The trafficking of child sex abuse material contributes to this harm and creates a distinct, renewed harm with each viewing and sharing. *See United States v. Weis*, 487 F.3d 1148, 1153 (8th Cir. 2007). Children rarely fully recover from the trauma of sexual abuse. A. Perry and D. DiLillo, *Child Sexual Abuse*, 147, in NA. Jackson, Encyclopedia of Domestic Violence, (2007). The offense at hand is grave and requires serious punishment.

> 2. *The history and characteristics of the defendant, the need to provide just punishment, and the need to protect the public*

The need to protect children is a cornerstone of our society and a focal consideration in sentencing child pornography crimes. Mr. Stace has sexually exploited children at every opportunity, including the tragic repeated rape of ▮ nine-year-old ▮. And he has shown he will continue unabated. Mr. Stace was 18 when he was arrested for those sexual assaults against ▮ ▮ and he is now 37. He has spent most of the intervening time incarcerated because every time he is released, he recidivates, jumping online immediately to access child pornography. Just eight days after release in 2016 he was caught on the public WI-FI at the government center trying to download sexually explicit images of children. PSR ¶¶ 44, 45. He was convicted and sent back to prison, until he was released on February 4, 2020. This time, it took just three days for him to start the online exploitation. PSR ¶ 58.

Mr. Stace's behavior comports with his mother's assessment: that "he does not like authority" and "wants to do what he wants, when he wants to." PSR ¶ 63. He did not respect rules or laws and "was going to continue to do what he wanted without regard for the consequences." *Id.* These words were borne out in Mr. Stace's criminal history and are a frightening prospect for a person with a sexual interest in children. Mr. Stace has shown he must be incapacitated, and his sentence must consider the danger his behavior demonstrates.

There is no sign of remorse in Stace's past. He has rejected or failed out of treatment repeatedly. PSR ¶¶ 76, 77. His reports show termination for being dishonest, deceitful, and violating rules. *Id*. The instant crimes and his past hands-on offending show he is a lifelong predator who seeks sexual gratification from children by multiple means. A strong sentence to reflect the seriousness of the offense, justly account for the crime, and protect the public is in order.

On the mitigating side, Stace immediately confessed his conduct and cooperated with law enforcement in identifying the email accounts that he used for child exploitation. He agreed to plead guilty without motions or (non-COVID-related) delay. Mr. Stace's early admissions and significant sparing of governmental resources mitigate his case.

A significant sentence of 285 months, adjusted to 270 months, acknowledges these facts while retaining the key focus on Mr. Stace's dangerousness and

unrelenting recidivism. This sentence will justly punish the offense and account for Mr. Stace's horrific history of child sexual exploitation and disregard for rule of law. Importantly, in conjunction with the intensive treatment component, it will also protect the public from future harm at the defendant's hands.

3. *The need for deterrence*

Mr. Stace has proven his propensity to commit hands-on offenses against children and subject them to the continuing trauma of online exploitation. This has been a lifelong pattern for this defendant. Deterrence is another important factor here, as no lesser sanctions have deterred him, even for a matter of days. A strong sentence like that requested is necessary

Additionally, general deterrence is a key sentencing goal of our justice system. *See Ferguson v. United States*, 623 F.3d 627, 631 (8th Cir. 2010); *United States v. Medearis* 451 F.3d 918 (8th Cir. 2006). The Court can send a strong message to those who provide a market for and trade in the sexual exploitation of children. This type of offense is rampant in our culture, facilitated by easy access to the Internet for those who view children as erotic objects or seek images of violence and degradation to assert power. Crimes like Mr. Stace's cause deep and lasting damage to our society and its most vulnerable members. The sentence in this case must not be too lenient to ensure general deterrence, as well as promote respect of the law.

4. *The need to provide correctional treatment in the most effective manner.*

Untreated, there is no doubt Mr. Stace will continue to seek sexual gratification from children. Thus far, he has not committed to treatment. As part of the plea agreement, Mr. Stace agrees to undergo the Bureau of Prison's Residential Sex Offender Treatment Program currently available at FMC Devens. Plea Agreement ¶ 7i. The parties' requested sentence thus also considers the need to provide effective treatment and the government respectfully requests that the Court recommend this facility and program.

5. *The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.*

The parties' recommended sentence conforms to the goal of sentencing parity. While it is difficult to find prior cases precisely comparable to this, in terms of the details of the criminal history and offense conduct tied to a pattern of immediate reoffending, the requested sentence is in line with sentences in other child pornography trafficking cases in which the defendant had a prior enhancing offense. For example, in *United States v. Koontz*, the defendant had a similar criminal history and pattern of abuse to Mr. Stace. *See* 19-cr-73 (JNE/KMM) (Doc. 76). Koonz had previously been convicted of repeated sexual contact with ▇▇ ▇▇ for about seven years, beginning when the child was eight years old. *Id*. The Presentence investigation also revealed molestation of another child and prior online trafficking of child pornography. *Id*. Koontz was convicted federally of

12

distributing child pornography to an undercover he believed was a child. *Id*. His Guideline range was 360-life and the government requested a sentence of 240 months. *Id*. Koonzt received 240 months. *Id*. (Doc. 87).

In *United States v. Howley*, the defendant had multiple prior sex offenses and disregarded law and rules in much the same way as Mr. Stace. 17-cr-73 (PJS/HB) (Doc. 61). Like Stace, Howley flouted treatment, serially recidivated and showed little or no remorse. *Id*. The Court sentenced him to 210 months' imprisonment with a Guidelines range of 292-365. In *United States v. Somers*, the defendant had a lower criminal history score than Stace, but demonstrated repeated online exploitation, child pornography trafficking convictions, and probation violations all very similar to Stace. 18-cr-96 (DWF) (Doc. 30). Somers was convicted of several counts of transporting, receiving, and possessing child pornography. Upon release, he violated his conditions by being untruthful, using a computer, continuing to access and possess child pornography, and failing to participate in sex offender treatment. *Id*. He then was convicted for a second time in federal court, this time for receiving child pornography. *Id*. (Doc. 11.) Somers' Guidelines were 180-210 months and he received a sentence of 192 months' imprisonment and lifetime supervised release. *Id*. (Docs. 40, 42.)   In *United States v. Doherty*, the defendant was described as a compulsive reoffender who, like Stace, had a prior child sexual exploitation offense, violated probation by accessing child

pornography, and then was convicted in federal court of online trafficking of this material. 18-cr-275 (ECT) (Doc. 24). Doherty's guidelines were 262 to 327 months. The government sought a sentence of 235 months, and Mr. Doherty received 180 months' imprisonment.

Like these cases, Mr. Stace trafficked child pornography with a history of sexual exploitation of children and did so with unrelenting repetition. While the criminal histories, probation violation, Guidelines, and precise prior and federal offenses vary somewhat, they demonstrate that an effective sentence of 285 months reflects warranted disparities and avoids unwarranted disparities. *See* 18 U.S.C. § 3352(a)(6).

B. **The government requests lifetime supervised release.**

The law requires at least five years of supervised release and permits the imposition of lifetime supervised release. *See* 18 U.S.C. § 3583(k). In sex offenses like this case, the guidelines advise the maximum term of supervised release, recognizing the danger posed by those driven to sexual gratification at the expense of children. *See* U.S.S.G. § 5D1.2(b) (Policy Statement). The danger Mr. Stace poses is clear and extreme. The government believes permanent supervision is key to

protecting the public in light of defendant's recidivism, and asks the Court to impose the maximum term.

### C. The requested sentence furthers the need to provide restitution to victims of the offense.

Mr. Stace must make restitution to the victims of his crime. 18 U.S.C. §§ 2259 & 3663A. Restitution is mandatory in this case and the parties agree regarding prospective requests for restitution. Plea Agreement ¶ 11. Mr. Stace agreed to pay full restitution to any victim in the images and videos he trafficked or possessed and to enter into a stipulation with victims who make requests prior to sentencing. *Id*. He will pay restitution of at least $3,000 per victim. *Id*. The government understands that Mr. Stace's attorney has negotiated with victims' counsel and is working on a stipulation that will include these agreements.

### D. The JVTA assessment also applies.

Mr. Stace is also subject to a special assessment of $5,000 under the Justice for Victims of Trafficking Act of 2015 ("JVTA"). *See* 18 U.S.C. § 3014; Plea Agreement ¶ 5f. Under the JVTA, the Court must impose this assessment on any "non-indigent person" convicted of a child exploitation crime. 18 U.S.C. § 3014(a)(3). In *United States v. Kelley*, 861 F.3d 790 (8th Cir. 2017), the Eighth Circuit held that "non-indigency" must consider both a defendant's current assets and his

future earning potential. *See id.* at 801-02. Under this standard, Mr. Stace is not indigent, and the assessment should apply.

The government does not dispute that currently Mr. Stace is indigent. He has almost no employment history, no assets, and has been incarcerated much of his adult life. PSR ¶¶ 86-88. However, Mr. Stace graduated high school, has worked and enjoyed janitorial jobs while incarcerated, has no debt, and is relatively young, such that he has future earning potential. Additionally, a $5,000 obligation would not significantly impact Mr. Stace's ability to support himself, yet is a meaningful contribution to compenstate victims of crimes like those he committed. If the Court imposes the JVTA assessment, the government asks that it be payable monthly and come due only after payment of restitution is complete. *See* 18 U.S.C. § 3014(b).

## CONCLUSION

Based on the foregoing and arguments to be made at sentencing, the United States respectfully asks that the Court sentence the defendant to 270 months of imprisonment (285 months less 15 months' credit for the state sentence), a sentence sufficient but not greater than necessary to effect the objectives of 18 U.S.C. § 3553(a).

Dated: June 3, 2021                          Respectfully Submitted,

W. ANDERS FOLK
Acting United States Attorney


*s/ Sarah E. Hudleston*

BY:  SARAH E. HUDLESTON
Assistant U.S. Attorney
Attorney ID No. 0351489